Ms. Petropalo, you had that pronounced right? Yes, Your Honor. Good morning, Your Honors, and may it please the Court. My name is Renee Petropalo, and I represent the appellant Thomas Steiner in this case. I'd like to request three minutes for rebuttal. Yes, Your Honor. The essential question before this Court is whether the indictment at Count 2 charged a single act of unlawful possession of ammunition under 18 U.S.C. 922G or whether it charged separate, discrete acts of possession. Because if multiple acts were bundled together into a single indictment, then the District Court committed reversible error by instructing the jurors that they did not need to agree on which ammunition was possessed to convict. The Government and I agree that simultaneous possession by a felon of multiple firearms or ammunition in one place at one time supports a single charge of 922G. But if ammunition or guns are acquired at separate times or stored separately, that is not simultaneous possession and separate 922G charges need to be brought. Does the language of the statute, I'm actually looking for it but I remember part of it, does the language of the statute that refers to any ammunition, any weapons, provide a solution to this problem? It doesn't. It doesn't specify. It doesn't require specific ammunition to be charged. It doesn't answer the question that's here, Your Honor. You could assume that the statute charges any firearm and that you don't need to agree on a particular firearm, but that wouldn't answer the question here. The question here isn't what the statute provides. It's are separate incidences of possession bundled into a single information so that a unanimity instruction was required? So the fact, whether or not you decide that the statute has as an element a firearm and you have to agree on a particular firearm. How practically would this work out? Is it your suggestion that the Government take the ammunition and list all the different types of ammunition and every different type of ammunition would be charged separately in an indictment and be separately listed in a verdict sheet? No. We don't suggest that that's what happens. This is not the typical case. The typical case is you have a felon who is in possession of multiple weapons at a location. He's charged properly with one count. What happened to make this case atypical is the way the evidence came in and the Government's theories of possession made it clear that there were two separate units of possession that were being charged here. It was the shotgun ammunition that's possessed in connection with the shotgun that's found in the camper and it's the .38 and .32 caliber ammunition that's unconnected to anything else in the case. I just want to ask one more question on this point. What's your verdict sheet going to look like? If an information charges multiple acts so that the information is duplicitous, the jury is going to be instructed you need to agree on which ammunition to convict and then you could have a special verdict sheet that would... The verdict sheet wouldn't look like that. What question do you want the jury to answer? You ask the jury just what you instruct the jury. You need to agree on which ammunition. At count one, did he possess the shotgun ammunition, the .12 gauge? At count two, well, it's all count two, excuse me, but the second part would be did he possess the other .32 and .38 calibers? And it's a checkmark. You want the two types of ammunition separated on a verdict sheet. In this case, yes. It's not because... You'd have multiple convictions then. If they found unanimously that he possessed the shotgun ammunition and if they found unanimously he had the .38 Winchester ammunition. In this case, yes. And he'd be subject perhaps to enhanced punishment. The irony of that is not lost on me, Your Honors. But you're willing to take that? I mean, that's what I was thinking. You're going to end up and then what if he has a different kind of ammunition and you have three separate opportunities for the jury to find him guilty? The problem is when you have a duplicitous indictment and you don't require unanimity, you allow the jury to decide. You keep saying when you have a duplicitous indictment, don't you have to establish it's duplicitous in the first instance? Aren't you assuming the conclusion when you keep saying that? The evidence that's presented at trial in the government's theories establish that it's a duplicitous indictment. The instruction that was given, the court actually accepts that this ammunition came from different locations. In Kennedy, the court explains that it's not enough that multiple pieces of ammunition or multiple firearms... But when you say it came from different locations, correct me if I'm wrong, there's two charges. There's the charge associated with the trailer and there's the charge associated with the basement of the home, right? Yes. Okay. And he's found not guilty with respect to the trailer. Yes. You're here complaining about the charge in which he was found guilty, right? Yes. And so is your argument that because the shells, the shotgun shells were found in one place and the ammo was found in another place in the very same basement, that that makes them subject to having to be charged separately? Kennedy explains it's not enough that they're found in the same address. You don't look at how the police... Is that a yes? Are you saying that because they were found in different places in the basement, they needed to be charged separately? It's not just stored separately. It's also that they were acquired separately. What do you mean acquired separately? Acquired by Steiner or acquired by law enforcement? The evidence was the police never say where they find the .38 and .32 caliber ammunition aside from the basement area. The only evidence that we have about where this .38 and .32 caliber ammunition comes from is from Greta Steiner who testified she brought ammunition into the house in 1999. I am confused. Is it different charge based on where the ammunition is found? Is it based on the different kinds of ammunition? Is it based on whether it's used for a handgun or a shotgun? It's the theories of possession. It was separately acquired. The shotgun ammunition was possessed. Could you flesh that out?  The shotgun ammunition was obtained, acquired, and possessed in connection with the possession of the shotgun and the camper. The other ammunition, it's old ammunition, and Greta says she brought this into the house in 1999. She brought boxes in when she moved in. Her deceased former husband was a collector. She stored these boxes in the garage. Mr. Steiner wouldn't have known about this other ammunition is what her testimony was. So when you say separately acquired, do you mean separately acquired by Mr. Steiner? Well, our position is he never acquired it, but it is brought into the house at separate times and for separate purposes. That's what makes it not simultaneously possessed. Well, wait a second. Possession is a continuing offense. It is. I mean, it's continuous. I mean, I can possess one gun, buy it one day, and then buy a second gun another day and have them both in my pockets, and I'm in possession simultaneously. Right. That's exactly right, Your Honor. And Kennedy says you talk about the course of the defendant's treatment of those pieces of ammunition. If I could point this court to Verrecchio, which is a First Circuit case, that really illustrates what I'm getting at. Actually, I wish you would, because before you get to the meat of Verrecchio, I'm a little curious whether you've preserved this argument at all. Yes. Right? Because in the district court, it seemed like Verrecchio was the basis of the objection, some assertion that the Third Circuit hadn't yet adopted what Verrecchio said and that, therefore, there needed to be a unanimity discussion. Right. But there wasn't, can you point to us where anybody said, hey, this is a duplicitous indictment. Nobody used the word duplicitous. I'll be very frank about that. This is what happened. The government argued that the jury needed to be instructed. Nobody needs to agree which ammunition to convict. Defense counsel objected to that instruction, and he proposed an alternative instruction saying, yes, if the ammunition comes from different locations, you do need to unanimously agree which ammunition was possessed. And then at the charging conference, defense counsel again objected to the, you don't need to be unanimous instruction, and he asked that that objection be a continuing objection, which is at appendix page 343. The court acknowledged it would be a continuing objection. Are those qualitatively different enough issues that there's a waiver here? I mean, to say to the district court the way 922G1 is being interpreted here, the Third Circuit's never accepted that it could be any gun. And then to say what you're saying and pressed in your briefing, which is, wait a second, these are two completely different charges being collapsed into a single count. Can you respond? Give us your response to the government that presses us and says, they just didn't make that argument at all. Yeah, it's the government actually that made the means, elements, argument in support of their request for the instruction. Defense counsel says their case law is an opposite. He poses a request for a unanimity instruction, asking for the jury to unanimously agree on which ammunition. That is the preservation. The fact that he doesn't say we need it because the indictment is duplicitous doesn't mean that he's waived the argument. He said under the Sixth Amendment, unanimity is required. What do we do with the discussion that we recently had in a case about, you know, arguments, not just generalized issues? I did discuss that in the reply brief. That argument or that issue was Joseph. It's talking about Rule 12. It's talking about suppression, argument suppression issues. But it's talking about, that is the context of it, but Joseph is about what you have to do to preserve a position. And doesn't it say it's not enough to give the higher level of abstraction with an issue. You've got to articulate your argument. Otherwise, the district court can't fairly address it. The argument was unanimity is required. Unanimity is required as a matter of constitutional law in the Sixth Amendment and due process. And Joseph is concerned with the rule, which requires pretrial defense counsel to bring suppression issues up. And so you can't say in the district court he didn't have standing. And then the appellate court say he didn't, there wasn't probable cause. Those are two different things. Your time is going very quickly and maybe you'll have to give me a little bit more time. There's another argument that you raise in your brief, which has to do with Steiner's arrest at a gas station. Yes. Based on an arrest warrant involving an offense that he, apparently he didn't appear. But that evidence was introduced or that incident was presented to the jury. Yes. And maybe you can talk about that. Okay. There's, since I'm running out of time, I'll try to be quick. There's three real problems with that. One is that it's a misrepresentation to say that the arrest warrant for failing to appear is what led police to the trailer in the first place. The other thing is background by this court has never been interpreted so broadly as to encompass everything, even remotely related to a conviction. Instead, every case Green Cites is a conspiracy case and they talk about background being narrowly interpreted. Is the evidence necessary to complete the story? If you take it away, is there this big gap? Green Cites and McCormick are evidence that says exactly that. You have to narrowly interpret the need for this evidence to establish background. You could take away the failure to appear at the preliminary hearing and tell exactly the same story. There's no conceptual gap. So the broadness, I would urge this court not to adopt this broad definition of complete the story and background that would swallow the 404B exception. Can you explain to my colleagues why we should accept the on-the-run piece of the 404B evidence as being reviewed under harmless error as opposed to plain error review? There were two pieces of 404B evidence that were problematic. There was the arrest based on the state warrant and then there were these repeated statements about he's on the run. And there was an objection about the warrant, as I understand it, but I didn't see any objection about repeated use of the words on the run, even though you complained about that in your briefing. And I'm just wondering if those really aren't separate things. They're not unconnected, but nobody objected to the repeated references of on the run. Yes, I understand the question, Your Honor. At appendix pages 115 and 116, the 404B is discussed altogether and included within that is this reference to he's in the trailer hiding out from law enforcement. That's all part of what the 404B proffer was. And there was an objection to the government's proffer of this evidence for 404B in this pretrial, appendix pages 115 through I believe it was 119 or 120. Now, in Benjamin, it was not a conspiracy case and parole status was allowed to be admitted as part of the background of the case. How is this different? I would distinguish that to say, according to the court, there was no way to explain why someone would be searching this person's house absent the explanation that a parolee agrees to have his house searched without probable cause. It's part of your conditions of parole. And so there it is necessary to complete the story. But complete the story has been very narrowly interpreted by this court. The other thing is in Caldwell, the court makes clear it's not enough just to articulate, complete the story, a 404B purpose. You have to explain how does it provide background without a propensity in place. Am I correct that Steiner took the stand in this case? He did, Your Honor. He admitted that he had been arrested and admitted to perhaps, did he admit to a prior offense? Yes, he admitted a check writing offense. In that light, isn't this harmless? I mean, he was acquitted on the gun charge, wasn't he? Yes, he was. So this evidence apparently didn't affect the jury with respect to the gun charge. Not with respect to the gun charge, but when you're talking about harmless error. Yes, I'm wondering about harmless error and as much as he admitted on the stand that he had been arrested and convicted of an offense. Yeah. We can't know what he would have had to testify if this bad act evidence hadn't come in. So that's like a totally different question. I'm sorry, I didn't hear that. We can't know what? You know, your decisions about when you have to testify, why you would testify, fluctuate based on what the evidence is going to be. So he knows prior to making that decision that the spore of phobia is coming in. Well, the point is he got on the stand and he said, I have been in serious trouble before. I don't know that check writing is really serious trouble, writing a bad check. I don't think that it's equated to, he has outstanding criminal charges that are so bad. Well, he acknowledged he was a felon. He has to. And it could have been a long time ago. This is a crime. Usually acknowledging that you're a felon is an acknowledgement that you've had serious legal trouble before. Actually, the felony is defined for the jury to mean just a crime that has a one-year sentence. So I don't know that that's necessarily true. When you talk about harm, the burden is on the government, and this court has to have a sure conviction that this propensity evidence didn't affect the verdict. And the reason propensity is bad is it puts a burden on the presumption of innocence. So we've got a weak case against Mr. Steiner. The evidence was absolutely not overwhelming. The jury disbelieved. When you say it's a weak case, you have the person who gave the tip take the stand. You've got him saying, I don't live there. That's my house. I'm in that house. And then they get the warrant. They go in. There's no indication that anybody else is taking ammunition in or out of that house, is there? Yes, actually. The evidence was that this house was open to others. That others were in the house when Steiner was not. He was showing this house to people. The evidence is that Stantz was in the house when Steiner was not. I understand the defense theory was Stantz planted the evidence, right? Right. And the jury seems to have accepted that theory because they acquitted count one. And if he planted the shotgun, it's... Well, are you suggesting that because they disbelieved Stantz, they found some reason not to acquit on count one, they necessarily believed that Stantz planted the evidence? That would be... We can't know, of course, what the jury found. But that's why the unanimity instruction is so important. By not making the jurors decide which ammunition was possessed, they're able to avoid any discussion of this potential conflict in their decision. Okay. Oh, okay. The idea, the unanimity instruction, again, it ties in with the 404B harm because four jurors could have believed Stantz, that this Steiner possessed all of the ammunition in the house. Four could have believed Stantz planted the ammunition, but Steiner possessed the other ammunition because he owned the house. How could that be? Because they acquitted him on count one. Right. Right? But you have to have all 12 agreeing that she didn't, you know, it's 4-4-4. Four could have believed Stantz planted the ammunition, but they found that Mr. Steiner possessed the other ammunition just because he owned the house. We have to get a word to Ms. Titella. Oh, I'm sorry. We have a few minutes remaining. Good morning, Your Honors. Jane Titella on behalf of the United States. The ultimate question for deciding this Rule 404B issue is, was the fact of an outstanding warrant the type of evidence that would over-persuade a jury and lead it to convict on that ground? It simply was not, even if that was the only evidence of defendant's bad acts. Well, we have, we've got very specific case law about 404B, and it requires in the first instance that there be some proper purpose, right? Yes. And part of that, at least laying the foundation for a proper purpose here, was the government making a representation to the court about what the background facts were. Would the government acknowledge that the information that the government proffered to the district court judge was inaccurate on that point? I don't think so. I think that what the government said is sort of ambiguous. There's nothing ambiguous about this. I'll read it to you if I need to. That's why he was arrested in this case. He was arrested on that outstanding warrant because he failed to appear for hearing that day. That's what led officers to him. That's what led officers to his trailer in the first place. That's just false. That isn't what led the officers to his trailer in the first place. Stance's tip led them to his trailer in the first place a week earlier. So how can the government stand on a position that the 404B evidence has a proper purpose when the purpose they were describing, you've got to have background because this only explains how they got to him in the first place, is based on a false premise. Well, I think what drew the law enforcement's focus on Steiner and what caused them to orchestrate this arrest when they did was the entire story from Stance that he had a gun, that he was planning to not show up for his preliminary hearing, and that he was planning to evade arrest. It's really a straightforward possession case, isn't it? You went to his house and there was pieces of a shotgun and several pieces of ammunition. Yes. Isn't that the essence of the case? That is the essence. In that context, why did you have to present to the jury this evidence that he had been arrested on a warrant for some other offense? What was the relevance of that in connection with the essence of the indictment? Well, I'll talk about the specific relevance, but this is a general matter. The Supreme Court has told us that there's no requirement that the government strip the story of a crime, of an investigation, of a search down to a bare syllogism. No, no, that's true, but it's got to have some relevance. So you're not answering Judge Fuentes' question. You can tell this whole story perfectly without ever saying, and by the way, he was arrested for another charge, right? Well, I think here's why I think this was relevant in this case. The government told the story of the investigation, the search, the arrest. There are especially, I think, two specific factual issues that were hotly contested that this evidence was very relevant to. Number one was the credibility of Tim Stantz. Even though he wasn't a government witness, the theory was that he framed Tim. It didn't seem to have any relevance. The point is the officers were acting on a tip. Based on the tip, they went to both the camper and the house and found the evidence that was presented in the trial. That's true, but there were a lot of contextual facts that affected the way that that bare evidence, that sort of essential evidence was interpreted. One of those was that the government paid, and this was repeated twice in an appeals brief, the government paid Tim Stantz $100 for his help in this case. Part of the reason it did that was because he drove Steiner to the BP station for the arrest. I think that to explain really how this happened, also Trooper Mott testified about his post-arrest statements that he was Nobody's suggesting. You seem to be making the argument that this is factually what happened, but that can't be enough of an argument for getting evidence in. Sure, it's historically accurate. What the government is saying now is historically accurate. What they said to Chief Judge Conte was not historically accurate, but what you're saying now is historically accurate. But we keep all kinds of things that are historically accurate away from juries because they just don't have anything to do with the criminal charge. You still haven't explained why it's relevant in any way to a straight-up possession charge that this guy was arrested when he was arrested on an unrelated state charge. How is that relevant to any aspect of any element of the crime charge? The state warrant does not directly prove any element of the crime charge, but what was directly relevant to the crime charge was the theory that, for example, Mr. Steiner was staying in the trailer. There were post-arrest statements that Trooper Mott testified about that he was staying on Tim Stantz's property, and to explain why he was having this post-arrest interview, I think he had to explain why he was arrested, how he was arrested. That was the district court's finding, to explain that this evidence was relevant. Maybe it was clearly erroneous. What relevance did it have to the charge of having in the camper and in his home ammunition and a shotgun? Again, it does not directly prove any element of the crime. It doesn't indirectly prove any element of the crime either. It's not circumstantial evidence of any element of the crime. The problem is, to me, it seems to have no relevance, and yet it is highly prejudicial. You did want to portray him as a really, really bad guy, didn't you? I think that he was portrayed as a really, really bad guy with evidence that was completely independent of the fact that there was an outstanding warrant. One might even say to that, yeah, that's true, which makes the government's decision to do this all the more puzzling. You still have not answered for me the question, which was raised again by your statement, this is what the district court found. The district court made a statement and a judgment about admitting this evidence and maybe needing it for background information based on the government's representation that but for this outstanding state warrant, the police would never have been led to this guy. That's just flat untrue. How can you rely on what the district court said in that respect? I read that part of the transcript as saying that the entire story of him having this gun with his plans to evade his arrest and with his plans to possibly use the gun on law enforcement, that was the entire story. All of that was not offered as 404B, but that was the entire story that did lead the government to really want to arrest Mr. Steiner on that date. Could the government have tried Steiner's case without the arrest warrant evidence? It could have, but it would have been a choppy and confusing narrative. I think that whenever you have a possession case, we see this in drug cases and gun cases, the police do not simply say this was in his pocket. The government does not simply say that. They talk about what the circumstances were. They set the scene. How about truthfully setting the scene by saying we got a tip and that's what led us to him and then based on the tip, we got a search warrant and then we found some things and subsequently when he was taken into custody, he made a statement which led us to his basement and we got a search warrant and we got some things there. Without ever saying that the reason that he was arrested was the fortuity, the complete fortuity that there happened to be a warrant that issued the day he was arrested in which the cops only knew he was going to be issued that day because they had been in touch with Mr. Stantz for a week. When you say you have to have some context, you can tell that story without ever saying, oh, and by the way, he's wanted by the state on other charges. Can't you? Well, I think that if you're telling the story of his arrest, you have to explain why he was arrested. The search happened simultaneously to his arrest. That's the problem. Maybe we're just going around on this so it's not helping. But when you say you have to tell why he was arrested, the short answer is no, you don't have to tell why he's arrested if it's not relevant to anything in the case and you still haven't explained, and maybe it's because it's unexplainable, why it was important for this jury to know that there was an outstanding warrant on a separate charge. I don't think that it was necessary for the jury to know it. But with Rule 404B, we weigh the appropriate value against the risk of unfair prejudice, and here the risk of unfair prejudice was very, very low. There was no conviction here. This was a warrant. They did not discuss the underlying charges. There was evidence at trial that Mr. Steiner had been convicted in other situations of burglary, of theft, of forgery. What of the repeated references to him as a fugitive? He's on the run. He's on the run. Well, first of all, I don't think that that was specifically preserved, and second of all, I think that can be distinguished from this other 404B evidence because that was sort of a theory. That was a characterization of the evidence of his not showing up for his preliminary hearing. When you say that's a characterization, does that assist the defense? When you say that our on-the-run statements are really another way of saying there was an arrest warrant outstanding for him because he didn't show up for the preliminary hearing, is that an acknowledgment in effect that they really did preserve that objection? I don't think that they, to the extent that they now argue that the characterization of him not showing up for his preliminary hearing is rule 404B evidence that was improperly admitted, I don't think that that was preserved. But I don't think that it is rule 404B evidence at all. I think that it's not evidence of a prior bad act. The prior bad act is not showing up for the preliminary hearing. The idea that he was on the run is the interpretation or characterization of that. And there was evidence from- That's somebody being on the run in effect of being a fugitive, failing to appear. You don't consider that to be the sort of evidence covered by 404B as a bad act, prior bad act? Maybe it is. And, you know, there was evidence that he didn't show up for the preliminary hearing, and we fully admit and that was proffered and decided as rule 404B evidence. But the characterization of that is on the run. The use of the words on the run or, you know, trying to evade law enforcement. What does it add? What does it have to do with possession? Why is that in the case at all? Why is it something that does come up and come up repeatedly? You know, I agree that it was not essential. It didn't directly prove any of the elements, but I think that it explains why- It doesn't indirectly prove any of the elements. Well, it tells the story of how he was arrested, of the course of the investigation. That was really a focus. You know, and again, this was already admitted into evidence, but the defense, if you look at the cross-examination, that was the focus of the defense. What were your conversations with Mr. Stantz? Why, you know, he was paid $100 for this help. What, you know, this kind of context to the conversations, the interrogation they had post-arrest, that really does add flavor to the case and to the different theories. Why isn't Ms. Pietropalo correct that there should have been unanimity with respect to the ammunition, given that there are different kinds of ammunition found in different parts of the house? Well, first of all, I don't think that there's evidence on the record that they were found in different parts of the house. I think they were all found in the basement. One piece of evidence was in a pocket of the pool table. One was in a bowl, also in the basement. And I think, you know, there's not further distinction of that ammunition at charge and count two on the record, and I think that part of the reason that there's not that additional distinction is that there was no objection to duplicity. Your Honor, Judge Jordan asked how this is, how the duplicity argument is qualitatively different enough from the means versus elements distinction to require separate objection. And that is a highly fact-intensive inquiry. As suppression in Joseph, facial challenges to the indictment are also listed in Rule 12b-3 as challenges that need to be made before trial. It's not really different than Joseph. It should be treated the same way because there's evidence, like a suppression motion, there's evidence that another party can give to distinguish that type of evidence. You know, again, this is, there's no, I think there's no evidence on the record that this ammunition was acquired at separate times or that it was used separately. And as Your Honor, Judge Van Aske pointed out, this case is really, I'm sorry, you know, there's no, possession is a continuing offense. Even if they were originally acquired at different times, they were possessed in a similar way. And there was no, you know, there was no separate objection that this evidence was, the ammunition was used separately or acquired separately. And again, you know, as set forth in our brief, the court has really decided the means-elements distinction in a very similar context, in the 924C context. Can I get you to go back, if I could, to the 404B? Just wanted to ask you in your few remaining moments here, what's your best pitch for why, even if admitting the 404B evidence was error, it should be viewed as harmless? Well, I think, you know, I think it's highly probable, I'm sorry, that this did not contribute to the outcome. This was pretty bland, milquetoast evidence that there was a warrant. It could have been for anything. There was evidence at trial that, you know. Put the on-the-run stuff in there, too. Assume for the sake of discussion, we don't think that repeatedly characterizing someone as a fugitive is bland. Why is that harmless? Well, I would say that, first of all, the fugitive characterization, the on-the-run characterization, I think that largely stemmed from sort of maybe Tim Stantz's characterizations. And I think his testimony was at least in part rejected by, was not credited by the jury. So that, I think, contributes to the harmlessness inquiry. And finally, I would just say, even though there wasn't a specific Rule 404B limiting instruction, there was a Rule 609 limiting instruction that was general. And this is on page 480. And it said, you must, you may find the defendant guilty only if the government proves beyond a reasonable doubt the elements of the crime. Okay. Ms. Tuttle, thank you very much. Thank you, Your Honors. Ms. Pietropoulou. Thank you, Your Honor. I think it's clear that whether the ammunition was simultaneously possessed or not is a fact question. That fact question should have gone to the jury. The instruction that was given takes it away from the jury, makes it no longer a fact question. The jury is told you don't need to decide whether it was simultaneously possessed or not. You've got to be specific with us. When you say the ammunition, we're talking about the ammunition at count two, right? Ammunition at count two. The government's theories and the evidence is that the shotgun ammunition, the 12-gauge ammunition, was found mere parts and pieces of the Sadov shotgun. I don't completely understand your theory. If the statute says any ammunition, which means that the jury has to be unanimous as to one single piece of ammunition, why would the court separate all of that and give the jury different charges concerning different pieces of ammunition if the statute just requires unanimity as to one single piece of ammunition? See, it's a different question. We're not dealing with statutory interpretation. You can assume that that's true, that that is the interpretation of the statute, but the defendant's conduct was more than one violation of the statute. That's what it says. It says any firearm or any ammunition. If you look at Varechia, Varechia is 23 guns found in a barn. The defendant goes to the barn, takes three out, puts them in his truck, and he's arrested. There are two counts charged. Count one is the three guns in the truck that he's just taken from the barn, he's going to use as part of his sale. Count two is the 21 other guns that are left in the barn. The court looks at how the defendant treated this ammunition. It had been stored all in one place, but now he was treating them as separate things, his stash of guns and the guns that he's selling. And Varechia, when it reaches the statutory question, I think it's important to look at how the court framed the issue. It was whether Congress intended to make possession of a particular firearm an element of 922G when simultaneous possession of multiple firearms is alleged. We're not starting from that baseline proposition. Okay, so what you're saying is that those are separate arguments, the duplicitous and the means versus element stuff? Because a moment ago I thought I heard you say in response to Judge Fuente, so that's a different issue or a different question. If that's a different question, then aren't we back to the point that you didn't preserve the duplicitous argument because the argument was made at the district court about Varechia. The means-elements argument was what was pressed. Rule 30 requires for a defense counsel to preserve an objection. You either object to the instructions that's being given, which happened, or you propose your own instruction, which also happened.  Joseph, I present you with Joseph. Joseph says it's not enough for you to say there's a constitutional violation and it's not enough for you even to say in the Joseph context the 12B1 has been violated. You've got to give the argument for why there's a problem. The argument that was made to Judge Conte was the Varechia shouldn't control argument. It was about means and elements. Because he was saying means and elements wasn't the right way of looking at it. That was what he was saying. But he also said unanimity is required because there's confusion. There are two ways you get the unanimity instruction, either because the jury can be confused, which happened here, or because the indictment is duplicitous. So absolutely the confusion issue was preserved, but I've never found a case where a defendant asking for a jury instruction has to also explain to the judge the legal theory behind his request to preserve his request for a jury instruction. Can we? Thank you, Your Honor. Ms. Pietropaola, thank you very much. And Ms. Titillo, thanks as well.